UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE SILVIS, on behalf of herself and others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BATH CONCEPTS INDUSTRIES, LLC,<br><br>　　　　　　　　Defendant. | No.: 1:25-cv-13006<br><br>Magistrate Judge David Weisman (Discovery)<br><br>**Hearing Date:**<br>Monday, March 9, 2026<br>9:15 A.M. Central Time<br>(In Person) |

**PLAINTIFF'S MOTION TO COMPEL RESPONSES TO
DISCOVERY INCLUDING THE PRODUCTION OF CALLING
DATA NECESSARY FOR CLASS CERTIFICATION AND TRIAL
AND ASSOCIATED AFFIRMATIVE DEFENSE INFORMATION**

## INTRODUCTION

Plaintiff Stephanie Silvis brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant Bath Concepts Industries, LLC ("BCI") repeatedly initiated telemarketing calls promoting its services to Plaintiff's telephone number even though Plaintiff had no relationship with BCI and did not consent to receive telemarketing calls. Plaintiff moves under Rules 26 and 37 to compel complete discovery responses central to both Rule 23 and the merits, including the call detail records and related data reflecting outbound telemarketing calls made by BCI.

These materials are routinely compelled in TCPA class cases because they bear directly on numerosity, commonality, typicality, predominance, damages, and affirmative defenses—particularly where, as here, Defendant asserts consent while withholding the data needed to test that defense and to identify the scope of the alleged calling campaign.

## BACKGROUND AND LOCAL RULE 37.2 MEET AND CONFER EFFORTS

Plaintiff filed this action alleging that BCI initiated telemarketing calls promoting its services to Plaintiff's telephone number without consent. Consistent with Rule 26(f), the parties conferred and commenced discovery on both merits and class issues. The parties exchanged Plaintiff's First Set of Interrogatories and Requests for Production, and Defendant served written responses on January 23, 2026. On February 4, 2026, Plaintiff's counsel emailed defense counsel requesting a meet-and-confer regarding specific interrogatories and requests for production, including Interrogatory Nos. 4 and 12 and RFP Nos. 5, 7, 11, 15, 16, and 18.

The parties conducted a substantive telephone meet-and-confer on February 13, 2026. During that conference, defense counsel confirmed that BCI is not aware of any sub-vendors of Exact Customer (Interrogatory No. 4) and represented that it has no knowledge of any prior

1

actions taken against Exact Customer relating to data provision or outbound calling (Interrogatory No. 12), though counsel indicated she would inquire regarding a potential amendment. With respect to RFP No. 5 (complaints and do-not-call requests), defense counsel reiterated BCI's position that because Plaintiff allegedly consented, no documents beyond those relating to Plaintiff would be produced absent a court order. Regarding RFP Nos. 7 and 11, defense counsel confirmed that BCI maintains there are no communications with or about Exact Customer beyond what has been produced. For RFP No. 15 (TCPA and consent-related policies), defense counsel again stated that because Plaintiff allegedly consented, BCI would not produce documents beyond Plaintiff absent a court order, though she would consider whether any policies related to acquiring consent exist. With respect to RFP No. 16 (call detail records for outbound marketing calls), defense counsel confirmed BCI's position that no class-wide call records would be produced because Plaintiff allegedly consented.

Despite good-faith efforts to resolve these disputes, Defendant has maintained blanket objections to producing class-related call data, consent materials, and complaints based on its unilateral assertion of consent and its view that discovery beyond Plaintiff is improper absent class certification. Those positions have left the parties at impasse and necessitate this Motion.

## LEGAL STANDARD

Rule 26(b)(1) authorizes discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case; generalized assertions of burden or privacy do not suffice. See *DR Distributors, LLC v. 21 Century Smoking, Inc.,* 513 F. Supp. 3d 839, 956–58 (N.D. Ill. 2021). In a TCPA case, consent is an affirmative defense that the caller must prove. *Blow v. Bijora, Inc.,* 855 F.3d 793, 803 (7th Cir. 2017). Indeed, in a TCPA case class discovery essential to Rule 23 may not be withheld while contesting certification. *Whiteamire Clinic, P.A.*

2

*v. Quill Corp.,* No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013); *Ossola v. Am. Express Co.,* No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015).

The scope of discovery in this case has already been set by the District Court. Judge Chang expressly ordered that "[d]iscovery shall commence on the merits of the individual Plaintiff's claims and the propriety of class certification," and that no summary judgment motion may be filed before the close of fact discovery. (ECF No. 15, December 11, 2025 Minute Entry.) Fact discovery runs through November 16, 2026, and retained-expert discovery on class certification will follow fact discovery before certification briefing. Defendant's position—that discovery should be limited to Plaintiff alone until a class is certified—is directly contrary to that directive and improperly attempts to re-litigate the Court's scheduling order

## ARGUMENT

**I.     The Call Records Plaintiff seeks are highly relevant to contested elements of Rule 23 and Damages.**

The request at issue relate to records that reflect that outbound calls that were made to putative class members ("Call Records"):

16. Please produce all documents containing any of the following information foreach outbound marketing call sent by you or your vendors:
a) the date and time;
b) the caller ID;
c) any recorded message used;
d) the result;
e) identifying information for the recipient; and
f) any other information stored by the call detail records.

**RESPONSE:** BCI objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" for "each outbound marketing call" irrespective of the individual called. BCI also objects on the basis that the Request is premature, irrelevant, and disproportionate to needs of this case. The Court has not certified a class action in this case and therefore, there is no defined set of class members. Subject to and without waiving the foregoing objection, BCI will produce documents containing information for each outbound call sent by BCI to Plaintiff in its possession, custody, or control on or before January 29, 2026.

3

*See* Exhibit 1. The Call Records Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23, the calculation of class-wide damages.

As an initial matter, where defendants contest elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"). Indeed, as Judge Schenkier previously held:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (emphasis added); *see also Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on the one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified" *quoting Whiteamire Clinic, P.A.*, 2013 WL 5348377, at

4

\*3); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at \*7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice").

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at \*1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at \*4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

Not surprising, then, is that courts across the country, including in this circuit, routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes. As the Northern District of Indiana has also explained:

> Courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case…As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.
>
> For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

*Fralish v. Digital Media Sols., Inc.*, No. 3:21-cv-00045-JD-MGG, 2021 WL 5370104, at \*9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action)

5

(internal citations and quotations omitted); *accord Fralish v. Deliver Tech., LLC*, No. 3:20-CV-00353-DRL-MGG, 2021 WL 3285528, at *9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

A few months ago, the Southern District of Indiana addressed a similar issue when granting a motion to compel calling data in a TCPA case:

> Defendant's arguments in its response to the motion to compel are, in large part, the same as those made in support of its motion to bifurcate. Those arguments—in essence, that Defendant should not be required to engage in what Defendant deems to be merits discovery before a class is certified—are rejected… the Court notes that no constitutional right to privacy would be implicated by Defendant producing the requested documents in this case. The non-parties may have a privacy interest in not having their private information disclosed, but given the "private information" at issue here—phone numbers and the fact that they received calls from Defendant—and the fact that the extent of the disclosure can be limited by the entry of a protective order, the Court, like the courts in both of the cases Defendant cites, finds that Plaintiff's right to conduct discovery in this case outweighs those particular privacy interests.

*Lewis v. Register.com, Inc.,* 2025 U.S. Dist. LEXIS 182245, *14 (S.D. Ind. September 16, 2025). Also analogous, a Court in the Eastern District of Pennsylvania has held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g., Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of

6

> action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, that there is a single discovery period, the motion to compel should be granted here. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff, or her expert, will determine which calls qualify for membership in the class in order to prepare this case for class certification. Because the sought-after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production. Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of telemarketing calls delivered to class members during the class period—discovery is highly relevant to damages suffered by absent class members. For this additional reason, the Call Records Plaintiff seeks—which she will use to identify potential class members—are highly relevant and this Court should compel their production.

7

Indeed, the Defendant's objections to this request should be overruled or disregarded. Defendant's refusal to produce outbound call detail records beyond Plaintiff rests entirely on its assertion that Plaintiff consented and therefore class-wide call data is unnecessary. That position is untenable. First, consent is an affirmative defense that Defendant bears the burden to prove; it does not permit Defendant to withhold discovery central to class certification and liability. Second, Defendant's consent narrative is directly and materially disputed by Plaintiff's sworn declaration. *See* Exhibit 2. Plaintiff has declared under penalty of perjury that she did not visit the website remodelyourhome.com on September 15, 2025, was not located in Pittsburgh, Pennsylvania at the time of the alleged opt-in, does not use the operating system and browser Defendant attributes to her, did not use a VPN or proxy, and did not authorize any third party to submit her telephone number on her behalf. *Id.*

In other words, the alleged consent is not merely contested; it is factually denied in detail. Defendant cannot rely on a disputed factual theory of consent to block production of the very call records needed to determine the scope of its calling campaign, the identity of putative class members, and the uniformity of its practices. Whether Plaintiff consented has no bearing on whether other consumers were called, how many times they were called, or whether Defendant maintained compliant procedures. The call detail records are therefore independently relevant to Rule 23 and damages regardless of Defendant's consent defense.

The resisting party bears the burden to show specifically why the request is improper; boilerplate objections and generalized assertions of burden are insufficient. *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). Furthermore, the proportionality factors also favor production. The discovery goes to the heart of class certification and damages. Defendant has superior access to the call data, and Plaintiff cannot obtain the records from any other source.

8

Limiting discovery to Plaintiff's individual calls would frustrate Rule 23 discovery and effectively prevent Plaintiff from proving numerosity or damages. If Defendant has legitimate confidentiality concerns regarding third-party phone numbers or customer data, those concerns are addressed through a protective order, not by withholding discovery entirely.

> II. **The Defendant should produce any evidence of its affirmative defense of consent it has for its calling conduct.**

Following the Plaintiff's request about calling records, the Plaintiff issued a request for any records that evidenced permission to make those calls:

> 17. Please provide all evidence of written consent to make calls in response to the foregoing, including any language that your company asserts complies with the E-Sign Act.
>
> **RESPONSE:** BCI objects to this Request as vague and misleading to the extent that it requests "all evidence." BCI also objects to this Request as vague and ambiguous because it requests "any language that your company asserts complies with the E-Sign Act." Plaintiff requests specific language on compliance with a federal statute, without any reference to what documents contain this language. BCI will produce all nonprivileged documents responsive to this Request in its possession, custody, or control on or before January 29, 2026.

*See* Exhibit 1. A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted: "In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission." *In the Matter of*

9

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 06-42 at ¶46, 21 FCC Rcd 3787, at *3812, 2006 FCC LEXIS 1713 (April 6, 2006).

The case law has made this clear, including in the Seventh Circuit Court of Appeals. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent.' Consistent with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014)."). As another court has held in this District when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, the Plaintiff has a legitimate need for this information and a reasonable expectation that it be produced. Another court in Massachusetts recently compelled the substantively same request in a TCPA case (as well as the same call records being sought above):

> Plaintiff's motion to compel, Dkt. [19], is GRANTED, subject to the below. The documents requested in RFP 16 are relevant to the assessment of damages and numerosity. Defendant objects that the request is facially overbroad, Dkt. [22] at 8-9, but that argument ignores Plaintiff's reasonable clarification, Dkt. [19] at 11-12. Accordingly, Defendant must produce documents sufficient to show the information identified in RFP 16, items (a)-(e), as well as well as other "data that is housed natively in the telemarketing call logs," Dkt. [19] at 11, consistent with RFP 16, item (f).

10

> The documents requested in RFP 17 are relevant to Defendant's consent defense. Defendant objects that RFP 17 would require it to hunt for "every single webpage on which putative class members referenced their telephone numbers," Dkt. [22] at 11, but the Court does not find this to be a reasonable reading of the Request. Defendant must produce documents on which it has relied, relies, or intends to rely in asserting a defense of consent…Pursuant to Fed. R. Civ. P. 37(a)(5)(A), Plaintiff may submit a motion for fees within 14 days.

*See Simmons v. Author Reputation Press LLC*, Civil Action No. 1:24-cv-12330, ECF No. 23 (D. MA., June 18, 2025).

Defendant's objections to RFP No. 17 fail because they improperly attempt to cabin discovery to Plaintiff alone based on Defendant's unilateral "consent" position. In a TCPA class case the existence and nature of consent is a central class-certification issue because Defendant's proof of consent (and the absence of consent) will determine whether common issues predominate and whether liability and defenses can be resolved with common evidence. The request therefore targets class-wide issues: whether Defendant and its lead sources used a standardized consent flow, standardized disclosures, uniform E-SIGN language, and common records or audit trails to capture and store consent across the putative class. Those materials are necessary to test Defendant's anticipated defense that consent was obtained through a uniform web-based opt-in process and to evaluate whether that defense is susceptible to class-wide proof or instead depends on individualized inquiry.

Defendant's "vague" and "misleading" objections are also beside the point because Plaintiff is not asking Defendant to hunt for "every webpage" ever used by any third party; rather, Plaintiff seeks the documents and information Defendant has relied on, relies on, or intends to rely on to claim written consent was captured and recorded for calls made during the class period—i.e., the standardized consent language, any versions of that language used during the relevant period, the fields and data elements stored to memorialize consent, the identity of the

source(s) of consent records (including lead generators), and the procedures and systems used to capture, transmit, and retain those records. If Defendant contends that consent defeats class treatment (or defeats liability), it must produce the class-wide consent evidence that would support that position. Limiting production to Plaintiff-specific materials would allow Defendant to invoke consent to resist certification while withholding the discovery Plaintiff needs to test whether consent was obtained through uniform methods and records capable of common proof. Because RFP No. 17 goes directly to predominance, typicality, and Defendant's affirmative defense, Defendant should be compelled to produce class-wide consent evidence and not merely Plaintiff-specific documentation.

Earlier this month in *Ashworth v. Popilush, LLC*, Civil Action No. 4:25-cv-26, the Eastern District of Virginia rejected the precise argument Defendant advances here—that consent evidence relating to absent class members need not be produced before class certification. *See* Exhibit 3. There, as here, the defendant limited production to the named plaintiff and argued it "does not have to provide documents relating to any party other than the plaintiff." Ex. 3 at 1. The court squarely rejected that position, holding that where discovery has not been bifurcated, "all evidence relevant to certification must be produced in the unified discovery period," and that consent evidence relating to absent class members was relevant and discoverable. *Id.* at 2. The court further held that the defendant had "not adequately shown any substantial burden to warrant further delay of production for data that is relevant and discoverable," and ordered production of electronic consent data relating to over 200,000 telephone numbers. *Id.* The reasoning in *Popilush* applies with equal force here. Defendant cannot invoke consent to defeat certification while withholding the very class-wide consent data that would support or undermine that defense.

### III. Complaints of Unwanted Telemarketing Conduct are Discoverable and Central to Damages

Consumer complaints directed at BCI's telemarketing misconduct related to issues affecting the individual merits and class certification, as they establish BCI knew it was violating the law, who it affected, and how it affected them, all "relevant" to Plaintiff's TCPA claims as the TCPA also allows for a damages award to be increased, up to treble damages, if the violation is found to be "knowing or willful." 47 U.S.C. § 227(c)(5). The request at issue is:

> **RFP No. 5:** Please produce all complaints concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.
>
> **RESPONSE:** BCI objects to this Request as premature, irrelevant, and disproportionate to the parties' claims or defenses in this case. The Court has not certified a class action in this case, and therefore, there is no defined set of class members. Thus, "all complaints or do-not-call requests concerning outbound calls made by [BCI]" that are not complaints or do-not-call requests made by Plaintiff is irrelevant to the allegations set forth in Plaintiff's complaint. BCI states that it is willing to confer in good faith with Plaintiff regarding the necessity and relevancy of this Request.

There is no meaningful dispute that this information may possibly be introduced at trial. In fact, the Fourth Circuit Court of Appeals affirmed a jury verdict holding a defendant subject to willful damages under the TCPA following a 5-day trial. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 2019 U.S. LEXIS 7573 (Dec. 16, 2019). In that lawsuit, the defendant's history of receiving prior complaints, their responses to those complaints, and settlements of such lawsuits were all issues considered by the jury. *Id.* at 662 (4th Cir. 2019) ("The court documented the many occasions on which Dish noted SSN's noncompliance and failed to act. The trial court catalogued the lawsuits and enforcement actions brought against Dish for telemarketing activities, none of which prompted the company to seriously improve its

13

business practices…When it learned of SSN's noncompliance, Dish repeatedly looked the other way…The district court also noted the half-hearted way in which Dish responded to consumer complaints, finding that the evidence shows that Dish cared about stopping complaints, not about achieving TCPA compliance.")

As there is no meaningful dispute that it is possible that the exact evidence that the Plaintiff seeks could be put into evidence at trial, the information sought is discoverable. Indeed, granting a similar motion to compel in a TCPA case, another Court held:

> Defendant's argument that the information need not be produced because it is not admissible under Federal Rule of Evidence 404(b) is without merit. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Thus, the Motion will be granted.

*Bratcher v. Navient Sols., Inc.,* No. 3:16-cv-519-J-20JBT, 2017 U.S. Dist. LEXIS 35015, at *6-7 (M.D. Fla. Mar. 2, 2017). If consumers complained that BCI was telemarketing them without consent, that is evidence BCI violated the statute. In addition, the TCPA provides for treble damages (*i.e.,* $1,500 instead of $500 per violation) when a defendant "willfully or knowingly" violates the statute. 47 U.S.C. § 227(C)(5). The FCC has held that "'[w]illful' in this context means that the violator knew that he was doing the act in question…A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg.*, LLC, 22 F.C.C. Rcd. 9453, 9470 n. 86 (May 14, 2007). As such, courts "have generally interpreted willfulness to imply only that an action was intentional." *Roylance v. ALG Real Estate Servs., Inc.,* 2015 U.S. Dist. LEXIS 44930, at *31 (N.D. Cal. Mar. 16, 2015) (citing cases); *see also, e.g., Hashw v. Dep't Stores Nat'l Bank,* 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013) (agreeing that "knowledge of the law is unnecessary and that a plaintiff must only plead the defendant willfully made the ATDS calls").

In other words, complaints about misconduct go the merits and damages. Given their relevance, courts do not hesitate to compel defendants to produce consumer complaints and investigations in TCPA actions. *See, e.g., Meredith v. United Collection Bureau, Inc.*, 2016 U.S. Dist. LEXIS 156214, at *19 (N.D. Ohio Nov. 10, 2016) (granting plaintiffs' motion to compel the production of consumer complaints in TCPA class action because it "seeks information that could have bearing on plaintiff's class claims as well as defendant's alleged willfulness").

Defendant objected to producing complaints and do-not-call requests beyond Plaintiff on the ground that no class has been certified and that such materials are irrelevant if Plaintiff allegedly consented. That objection misstates both relevance and the scope of discovery. Complaints and DNC requests bear directly on willfulness, knowledge, compliance procedures, and the systemic nature of Defendant's calling practices. They are relevant even in an individual TCPA case and are central to damages where treble damages are sought. Defendant's assertion that Plaintiff consented does not render other complaints irrelevant; rather, complaints by other consumers would tend to show whether Defendant's practices were isolated or systemic and whether Defendant continued calling after receiving notice of noncompliance. Defendant cannot insulate its compliance history from discovery by invoking a merits defense. This is especially true when BCI is facing multiple lawsuits alleging violations of the TCPA currently. BCI's conclusory objections should be deemed invalid, and BCI should be compelled to provide documentation completely responsive to Request No. 5.

## CONCLUSION

For the foregoing reasons, Defendant's blanket refusal to produce class-wide call records, consent evidence, and complaint data is contrary to Rule 26, the Court's scheduling order, and controlling TCPA authority. The requested materials are central to Rule 23, damages, and

Defendant's affirmative defenses. Plaintiff respectfully requests that the Court grant this Motion to Compel in full and award such further relief as it deems just and appropriate.

    Dated:  February 19, 2026

*/s/ Carly M. Roman*
Carly Roman
Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com
sam@straussborrelli.com

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Carly M. Roman, hereby certify that on February 19, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 19th day of February, 2026.

        Respectfully submitted,

        */s/ Carly M. Roman*
        Carly Roman
        **STRAUSS BORRELLI PLLC**
        980 N. Michigan Avenue, Suite 1610
        Chicago, IL 60611
        Telephone: (872) 263-1100
        Facsimile: (872) 263-1109
        croman@straussborrelli.com