**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| STEPHANIE SILVIS, *on behalf of herself and others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> BATH CONCEPTS INDUSTRIES, LLC, <br><br> Defendant. | No.: 1:25-cv-13006-EEC <br><br> Honorable Judge Edmond E. Chang <br><br> Magistrate Judge David Weisman |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL,
<u>ADDRESSING DEFENDANT'S REQUEST TO BIFURCATE DISCOVERY</u>**

**INTRODUCTION**

Defendant Bath Concepts Industries, LLC ("BCI")'s opposition to Plaintiff's Motion to Compel is, in substance, not only a request to bifurcate discovery, but an effort to impose a one-sided discovery regime. Specifically, BCI seeks to conduct individualized Plaintiff-specific discovery, including Plaintiff's deposition, while shielding itself from any class-wide discovery, all to position a targeted dispositive motion on Plaintiff's individual claim. In doing so, BCI improperly front-loads discovery obligations onto Plaintiff while delaying its own, creating a plainly asymmetrical process. BCI further asks the Court to halt class discovery for ninety days and permit it only if Plaintiff survives its motion. BCI's request for one-sided bifurcation should be denied for three independent reasons.

***First,*** the sequencing of discovery has already been resolved, and BCI never moved to bifurcate it—raising the issue only now in response to Plaintiff's Motion to Compel. District Judge Chang's scheduling order expressly directs that discovery "shall commence on the merits of the individual Plaintiff's claims *and the propriety of class certification*" simultaneously. (ECF No. 15,

1

Dec. 11, 2025 Minute Entry) (emphasis added). Modifying that order requires a showing of "good cause" under Federal Rule of Civil Procedure 16(b)(4). *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011). BCI fails to even address, much less meet, that standard. Regardless of the merits of bifurcation in this case, the Court already resolved that question, and BCI offers no basis to undo that resolution.

*Second,* BCI's consent defense is specifically and corroboratively denied by Plaintiff. BCI's evidence is a TrustedForm certificate showing that someone in Pittsburgh, Pennsylvania, using Windows 8.1 and Firefox, submitted a consent form on September 15, 2025. However, Plaintiff was living and working in Washington State at the time, where she has resided for approximately three years, routinely accessed the internet from within Washington, and was physically present in Washington on September 15, 2025, as confirmed by her transaction history. (Supp. Decl. of Stephanie Silvis, filed herewith as Exhibit 1, ¶¶ 5-7.) That is a definitive refutation of BCI's evidence. At the very least, a disputed consent defense, built on a consent form that Plaintiff could not plausibly have submitted, for an affirmative defense BCI always pled, does not entitle BCI to halt all class discovery.

*Third,* bifurcation would not streamline this case so much as unduly complicate it, undermine judicial economy, and substantially prejudice Plaintiff. As explained below, the line between "individual" and "class" discovery does not exist here. Evidence about BCI's vendor Exact Customer, its lead-generation practices, its consent forms, and its call records is simultaneously relevant to whether Plaintiff consented and to whether BCI's consent practices present common questions amenable to class-wide resolution. Splitting that evidence into two phases would multiply proceedings, duplicate depositions, and generate endless disputes over what

belongs in which phase. Courts in this District and across the country routinely reject similar requests for bifurcation.

## FACTUAL BACKGROUND

Plaintiff filed this action alleging that BCI initiated at least 61 telemarketing calls to her cell phone—a number on the National Do Not Call Registry since April 2005—without her consent. (Compl. ¶¶ 9-10, 13-14.) The calls came from telephone numbers linked to BCI's "BCI Acrylic" prerecorded dial tree, and were made between September 15 and October 11, 2025. (*Id.* ¶¶ 15, 18-19.) Plaintiff has never been a customer of BCI and has never consented to receive calls from BCI. (*Id.* ¶ 12.)

BCI relies on a TrustedForm certificate generated by a third-party vendor, Exact Customer, showing that someone visited the website remodelYourHome.com from a Pittsburgh, Pennsylvania IP address on September 15, 2025, using Windows 8.1 and Firefox, and clicked a consent button. (*See* ECF No. 26-3.) However, Plaintiff was physically present in Washington State on that date, as confirmed by documentary evidence, including her transaction history. (Exhibit 1, ¶ 7.) Plaintiff has resided in Washington for approximately three years; does not use Windows 8.1 or Firefox; never visited remodelyourhome.com; never authorized any third party to submit her information; and at the time of the purported submission was renting an apartment in Tacoma under a lease that does not permit structural remodeling. (*See* ECF No. 22-2, ¶¶ 4-8, 13 and Exhibit 1, ¶¶ 5-8.)

On February 16, 2026, Plaintiff moved to compel production of three categories of discovery: all outbound call logs (RFP 16); class-wide consent evidence BCI intends to rely upon (RFP 17); and consumer complaints about BCI's telemarketing (RFP 5). (Dkt. 22.) BCI responded with what it frames as a request to bifurcate discovery: limit all proceedings to Plaintiff's

3

individual consent claim, take Plaintiff's deposition, and seek a targeted dispositive motion before any class discovery proceeds. (Dkt. 26.)

## LEGAL STANDARD

District courts have broad discretion to control discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598-599 (1998);  Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002).  In accordance with the Federal Rules, a court may, "for good cause," limit the scope of discovery or control its sequence to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); Crawford-El, 523 U.S. at 598; Tamburo v. Dworkin, No. 04 C 3317, 2010 U.S. Dist. LEXIS 121510, 2010 WL 4867346, at *1 (N.D. Ill. Nov. 17, 2010). Although "the ultimate decision to bifurcate is within [the court's] discretion, because [the court is] expected to act to secure the just, speedy, and inexpensive determination of every action, bifurcation remains the exception, not the rule." *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, 431 F.Supp.2d 834, 836 (N.D. Ill. 2006) (quotations and citations omitted). The party seeking bifurcation bears the burden of showing that judicial economy would be served in favor of bifurcation. *Id*. at 837. *See also*  Cephalon, Inc. v. Sun Pharm. Indus., Ltd., No. 11-5474, 2013 U.S. Dist. LEXIS 94575, 2013 WL 3417416, at *3 (D.N.J. July 8, 2013) ("[T]he moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties.")

## ARGUMENT

I.    **The Court's Scheduling Order already governs the sequencing of discovery, and BCI has not shown good cause to modify it.**

When Judge Chang entered the scheduling order in this case, he did not leave bifurcation to a future dispute. He directed: "Discovery shall commence on the merits of the individual Plaintiff's claims and the propriety of class certification." (ECF No. 15, Dec. 11, 2025 Minute

Entry.) To modify that order, BCI must show "good cause" under Federal Rule of Civil Procedure 16(b)(4). *Alioto*, 651 F.3d at 719-20. That standard turns primarily on the moving party's diligence. *Id*. Here, however, BCI does not even attempt to demonstrate diligence, nor does it explain why it failed to seek bifurcation earlier and instead raises it only in response to Plaintiff's Motion to Compel. Notably, in the parties' Joint Case Management Report, which was submitted prior to Judge Change's scheduling order, BCI did not even raise bifurcation as an issue. (*See* ECF No. 14.) BCI makes passing mention of the "good cause" standard but makes no effort to satisfy it. BCI thus fails to show "good cause" to modify the scheduling order, and on this basis alone, its request for bifurcation should be denied.

The practical math reinforces the point. BCI's request is not a single modification to the scheduling order; rather, it is a wholesale restructuring of it, with multiple unacknowledged changes. BCI proposes ninety days of individual discovery, followed by a targeted dispositive motion requiring separate court authorization, and only then the commencement of class discovery. That structure cannot coexist with the existing November 16, 2026 fact discovery deadline, which means BCI is also implicitly seeking a significant extension of that deadline. Yet BCI never invokes Rule 16(b)(4) in any meaningful way, never attempts to demonstrate diligence or show "good cause" to modify the scheduling offer, and offers no proposed timeline showing how a two-phase structure would fit within, or responsibly modify, the schedule Judge Chang entered. A party that wants to restructure an existing scheduling order must at minimum acknowledge the legal standard governing that request and make some showing of entitlement. BCI has done neither.

## II. BCI's disputed consent defense does not justify bifurcation.

BCI's argument for bifurcation hinges on its consent defense: if Plaintiff consented, her individual claim fails, she cannot serve as class representative, and class discovery is unnecessary. That reasoning fails here for two reasons.

First, the premise is wrong. Plaintiff's consent is disputed. BCI's evidence is a TrustedForm certificate showing a web submission from a Pittsburgh, Pennsylvania IP address, using Windows 8.1 and Firefox, on September 15, 2025. Plaintiff has submitted has submitted a second declaration that includes supporting documentary evidence establishing that she was physically present in Washington State on September 15, 2025. (*See* Exhibit 1 ¶ 7.) She has lived and worked in Washington for approximately three years. (*Id.* ¶¶ 5-6.) She does not use Windows 8.1 or Firefox. (*See* ECF No. 22-2, ¶¶ 7-8.) She never visited remodelyourhome.com, never requested home remodeling services, and was renting an apartment under a lease that does not permit structural remodeling work. (*See* ECF No. 22-2, ¶¶ 4, 12 and Exhibit 1, ¶¶ 8.) There is no plausible explanation for why a Washington resident's telephone number appears on a consent form submitted from a Pittsburgh IP address. That is precisely the kind of dispute that requires discovery.

Second, even if BCI's consent evidence were undisputed, a consent defense does not automatically justify bifurcation. Consent is an affirmative defense that BCI bears the burden to prove. *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). A defendant cannot freeze class discovery by simply asserting a defense it believes might succeed. Under that logic, every TCPA defendant asserting consent could stall class discovery indefinitely. Courts have rejected that position. See *Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) ("[T]he Court cannot permit [Defendant] on one hand to contest class

6

certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.").

Finally, whether BCI's consent-collection process was legally adequate is itself a class-wide question. If BCI and Exact Customer used standardized web forms and consent flows to generate leads for the class of people BCI called, whether those processes produced valid, compliant consents is susceptible to common proof. Plaintiff cannot test whether BCI's consent practices were uniform or defective across the class without the class-wide call records and consent data sought in RFPs 16 and 17. BCI cannot invoke consent as a class-defeating defense while simultaneously withholding the only evidence that could prove or disprove that defense class-wide. *Id.*

### III. Bifurcation would be inefficient because individual and class discovery are substantially intertwined.

Discovery relevant to commonality and typicality under Rule 23 will necessarily overlap with the merits. As the Supreme Court has explained, class certification analysis frequently "entail[s] overlap with the merits…. . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013).

This kind of overlap is what caused another Court in the Northern District of Illinois to deny a motion to bifurcate in a TCPA case:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023).

Other courts within this District and beyond have agreed. *See, e.g.*, *See Zielonksi v. eHealth Insurance Services, Inc.*, Civil Action No. 23-cv-16406, ECF No. 29 (N.D. Ill. July 12, 2024) ("Defendant's…motion to bifurcate discovery are denied…I am not going to delay this case further through bifurcation of discovery."); *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Where a defendant relies on a standardized lead-generation and consent process, the validity, scope, and application of that process is necessarily common proof. Consider the evidence at the core of BCI's consent defense: How did Exact Customer generate the lead for Plaintiff's telephone number? What websites and forms did Exact Customer and any sub-vendors deploy? Was the consent language TCPA-compliant? Was the same consent flow used to generate leads for other calls to other class members? What do BCI's call records reveal about who received calls and when? Every one of those questions is simultaneously (a) relevant to whether Plaintiff individually consented and (b) relevant to whether BCI's consent practices present common questions susceptible to class-wide resolution. There is no practical way to answer the first set of questions without answering the second. This is precisely the same dynamic recognized by the Supreme Court in *Behrend*: class certification analysis overlaps with the merits because resolving class issues necessarily involves questions that are intertwined with the underlying claims.

Given that overlap, splitting discovery into two tracks would not save work so much as create it. First, bifurcation would invite unnecessary disputes over whether discovery is "merits" or "class" related, consuming the Court's limited resources. *Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017). S*ee also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two."). Next, the parties would undergo duplicative rounds of written discovery, and the same BCI and Exact Customer witnesses would be deposed twice: once in the "individual phase" and again in the "class phase." *See, e.g., Hartley-Culp v. Credit Mgmt. Co*., No. 3:cv-14-0282, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. Sept. 15, 2014) ("[B]ifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions."). That duplication is "the definition of inconvenience." *EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. Oct. 21, 2014).

These are not theoretical concerns. In *Charvat v. Plymouth Rock Energy, LLC*, the court denied bifurcation in a TCPA case expressly because "bifurcation would have the opposite effect" of promoting efficiency. No. 15-CV-4106, 2016 U.S. Dist. LEXIS 6778, at *6-7 (E.D.N.Y. Jan. 12, 2016). Similarly, in *Bond v. Folsom Insurance Agency LLC*, another TCPA case, the court reviewed relevant case law and denied the motion to bifurcate discovery. No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). There, the court found there was

considerable overlap between discovery relevant to the merits of the individual claims and issues of class certification, and that bifurcation would not promote efficiency. It noted that bifurcation could lead to duplication of discovery and additional disputes regarding the distinction between merits and class discovery, ultimately concluding that bifurcation would be inefficient. *Id*. This Court should reach the same conclusion.

### IV. Bifurcation would materially prejudice Plaintiff through duplicated work, delay, and the risk that critical evidence will be lost.

Even setting aside the absence of good cause to modify the pre-existing scheduling order and the inefficiencies bifurcation would create, bifurcation would materially prejudice Plaintiff in ways BCI does not address.

The duplication of effort, discussed more fully in Section III, is the first and most direct form of prejudice. Under BCI's proposed framework, the parties would serve two rounds of written discovery, depose the same witnesses twice (including BCI personnel, Exact Customer personnel, and any sub-vendors), and brief two rounds of dispositive motions. The witnesses addressing Plaintiff's individual consent in Phase 1 would be re-deposed on class-wide consent practices in Phase 2, and the same documents relevant to Plaintiff's individual claim would be revisited for the class. BCI would benefit from forcing Plaintiff to litigate in two separate, sequential proceedings what should be resolved in one.

The risk of evidence loss is the second and more serious form of prejudice. Exact Customer is a third-party vendor with no obligation to maintain records indefinitely, as far as Plaintiff is aware. Whatever sub-vendors Exact Customer used to generate leads are additional parties beyond the Court's compulsory process. Call detail records, IP logs, consent form data, and vendor communications—the core of the class discovery Plaintiff seeks—are held by entities that are not parties to this litigation and whose cooperation and record-preservation cannot be guaranteed. With

every month of delay, the risk that those records are modified, purged, or lost increases. "With the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009). That concern is not hypothetical here: the geographic discrepancy between Plaintiff's Washington presence and the Pittsburgh IP address in BCI's consent evidence already suggests that the evidentiary chain linking Exact Customer's lead generation to the TrustedForm certificate is fragile. The longer the parties wait to obtain third-party discovery, the greater the risk that evidence no longer exists.

By contrast, there is no meaningful prejudice to BCI from proceeding with unified discovery. BCI is not facing unbounded demands. The discovery at issue—outbound call records, consent documentation, and consumer complaints—is information BCI and its vendors maintain electronically. Any legitimate confidentiality concerns about third-party telephone numbers or customer data are addressed through the protective order that is routine in TCPA class cases. As another federal court explained in denying a similar motion in a TCPA case:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.

>            \*        \*        \*

> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019). The same logic applies here.

11

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny BCI's request to bifurcate discovery, grant Plaintiff's Motion to Compel in full, and direct BCI to produce documents responsive to RFP Nos. 5, 16, and 17 within a reasonable time set by the Court.


Dated: March 20, 2026                                           Respectfully submitted,

                                                                By: */s/ Carly M. Roman*
                                                                Carly M. Roman
                                                                Samuel J. Strauss
                                                                **STRAUSS BORRELLI PLLC**
                                                                One Magnificent Mile
                                                                980 N. Michigan Ave., Suite 1610
                                                                Chicago, IL 60611
                                                                Telephone: (872) 263-1100
                                                                Facsimile: (872) 263-1109
                                                                croman@straussborrelli.com
                                                                sam@straussborrelli.com

                                                                Anthony Paronich
                                                                **PARONICH LAW, P.C.**
                                                                350 Lincoln St., Suite 2400
                                                                Hingham, MA 02043
                                                                Telephone: (617) 485-0018
                                                                anthony@paronichlaw.com

12

## CERTIFICATE OF SERVICE

I, Carly M. Roman, hereby certify that on March 20, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, via the ECF system.

DATED this 20th day of March, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Carly M. Roman*
Carly M. Roman
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

13